**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CODY THERIOT**                                          **CIVIL ACTION**

**VERSUS**                                                    **CASE NO. 20-2836**

**REC MARINE LOGISTICS, LLC**                      **SECTION: "G"**

## ORDER AND REASONS

Before the Court is Defendant REC Marine Logistics, LLC's ("Defendant") Motion for Partial Summary Judgment.[1] Defendant seeks dismissal of Plaintiff Cody Theriot's ("Plaintiff") claim for maintenance and cure.[2] Defendant argues that Plaintiff has failed to mitigate his damages and has engaged in willful misconduct and unreasonable refusal of cure by: (1) abusing Methamphetamine; (2) repeatedly failing to attend scheduled medical appointments; (3) failing to take medications as prescribed; (4) failing to attend physical therapy as prescribed; and (5) behaving in such a combative and aggressive manner with his medical providers that certain medical providers have removed themselves from his team of care.[3] Plaintiff opposes the motion, and argues that there are issues of fact in dispute regarding whether he refused medical care.[4] For the reasons discussed in more detail below, there are genuine issues of material fact in dispute, which preclude summary judgment on the issue of maintenance and cure. Accordingly, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 32.

[2] *Id.* at 1.

[3] *Id.*

[4] Rec. Doc. 33.

1

# I. Background

## A.    *Factual Background*

This litigation arises out of injuries allegedly sustained by Plaintiff while working as a deckhand aboard the M/V BRIANA MARIE on June 15, 2020.[5] Plaintiff claims that he was attempting to tie the vessel to an offshore platform in the Gulf of Mexico when a rope wrapped around him, pulled him overboard, and caused severe injuries to his left arm and shoulder.[6] The following facts are undisputed by the parties.

After the accident on June 15, 2020, Plaintiff was admitted to Terrebonne General Medical Center, and underwent a surgical procedure on his left shoulder performed by Dr. Geoffrey Stone of Gulf Coast Orthopedics.[7] Specifically, Dr. Stone performed a left shoulder four-part proximal humerus fracture open reduction and internal fixation, open rotator cuff repair of the supraspinatus tendon, proximal biceps tenodesis, axillary nerve neurolysis, proximal humeral bone grafting, coracoid osteotomy, coracoid open reduction and internal fixation, and repair of the anterior band of the inferior glenohumeral ligament.[8]

After surgery, Plaintiff was referred to begin physical therapy at PhysioFit beginning on August 10, 2020.[9] From the outset of physical therapy, Plaintiff had a "poor tolerance" for the

---

[5] Rec. Doc. 1 at 2 (the Complaint incorrectly lists the date as June 14, 2020); Rec. Doc. 32-1 at 1; Rec. Doc. 33-1 at 1.

[6] Rec. Doc. 1 at 2; Rec. Doc. 32-1 at 1; Rec. Doc. 33-1 at 1.

[7] Rec. Doc. 32-1 at 2; Rec. Doc. 33-1 at 1.

[8] Rec. Doc. 32-1 at 2; Rec. Doc. 33-1 at 1.

[9] Rec. Doc. 32-1 at 2; Rec. Doc. 33-1 at 1.

treatment and made "poor progress."[10] Plaintiff also missed over half of his prescribed physical therapy appointments in 2020,[11] but he asserts that this was due to high pain levels.[12]

On September 10, 2020, Plaintiff was referred to Dr. Haydel of Haydel Spinal Pain & Wellness for management of narcotic and non-narcotic prescription medication.[13] On January 7, 2021, Dr. Stone ordered an electromyogram and nerve conduction study, and scheduled the procedure for February 3, 2021.[14] Plaintiff arrived at the Southeast Neuroscience Center on that date, but left the Center before being seen.[15] Dr. Stone stressed the importance of the electromyogram and nerve conduction study to Plaintiff on April 15, 2021, but Plaintiff did not undergo the procedure until November 15, 2021.[16]

Plaintiff tested positive for Methamphetamine use on March 30, 2021 and again on April 27, 2021.[17] On June 14, 2021, Dr. Haydel found that Plaintiff "displayed aberrant behavior" and would "be weaned of opioids."[18] Dr. Haydel also instructed Plaintiff to receive appropriate treatment and "discontinued" his medication agreement.[19]

---

[10] Rec. Doc. 32-1 at 2; Rec. Doc. 33-1 at 1.

[11] Rec. Doc. 32-1 at 2; Rec. Doc. 33-1 at 2.

[12] Rec. Doc. 33-1 at 2.

[13] Rec. Doc. 32-1 at 2; Rec. Doc. 33-1 at 2.

[14] Rec. Doc. 32-1 at 3; Rec. Doc. 33-1 at 2.

[15] Rec. Doc. 32-1 at 3; Rec. Doc. 33-1 at 2.

[16] Rec. Doc. 32-1 at 3; Rec. Doc. 33-1 at 2.

[17] Rec. Doc. 32-1 at 3; Rec. Doc. 33-1 at 2.

[18] Rec. Doc. 32-1 at 3–4; Rec. Doc. 33-1 at 2.

[19] Rec. Doc. 32-1 at 4; Rec. Doc. 33-1 at 2.

Plaintiff admittedly missed a number of appointments with Dr. Stone in 2021.[20] Subsequently, on April 25, 2022, Plaintiff underwent a left should reverse arthroplasty, proximal biceps tenodesis, proximal humeral bone grafting, and hardware removal.[21] Upon discharge, Plaintiff was ordered to start physical therapy.[22] However, Plaintiff did not attend a physical therapy appointment on May 9, 2022.[23]

At a post-surgery follow up appointment on May 12, 2022, Plaintiff admitted he had not taken his antibiotics as prescribed, and he was diagnosed with an infection as a result of the surgery.[24] As a result of the infection, Plaintiff was admitted to Physicians Medical Center on May 27, 2022, for administration of IV antibiotics.[25] Physicians Medical Center performed weekly drug testing that led to a series of confrontations with medical staff regarding Plaintiff's unwillingness to be drug tested and continued threats to leave the facility.[26] On May 30, 2022, Plaintiff tested positive for Amphetamines.[27] Following several confrontations, on June 13, 2022, Dr. Watkins removed himself and Haydel as medical consults for Plaintiff.[28] Plaintiff was discharged from the facility on July 7, 2022, after his infection cleared.[29]

---

[20] Rec. Doc. 32-1 at 4; Rec. Doc. 33-1 at 3.

[21] Rec. Doc. 32-1 at 4; Rec. Doc. 33-1 at 3.

[22] Rec. Doc. 32-1 at 4; Rec. Doc. 33-1 at 3.

[23] Rec. Doc. 32-1 at 4; Rec. Doc. 33-1 at 3.

[24] Rec. Doc. 32-1 at 5; Rec. Doc. 33-1 at 3.

[25] Rec. Doc. 32-1 at 5; Rec. Doc. 33-1 at 3.

[26] Rec. Doc. 32-1 at 5–7; Rec. Doc. 33-1 at 4.

[27] Rec. Doc. 32-1 at 7; Rec. Doc. 33-1 at 4.

[28] Rec. Doc. 32-1 at 7; Rec. Doc. 33-1 at 4.

[29] Rec. Doc. 32-1 at 7; Rec. Doc. 33-1 at 4.

On August 9, 2022, Dr. Stone referred Plaintiff to Dr. Sina Pourtaheri for complaints regarding his cervical spine.[30] Plaintiff missed an appointment with Dr. Pourtaheri on September 22, 2022.[31] However, he attended an appointment with Dr. Pourtaheri on December 8, 2022.[32]

**B.    *Procedural Background***

Plaintiff filed a Complaint against Defendant in this Court on October 16, 2020.[33] Plaintiff brings claims under the Jones Act and general maritime law.[34] On December 23, 2022, Defendant filed the instant motion for partial summary judgment on the issue of maintenance and cure.[35] On January 3, 2023, Plaintiff filed an opposition to the motion.[36]

## II. Parties' Arguments

**A.    *Defendant's Arguments in Support of Motion for Partial Summary Judgment***

Defendant seeks dismissal of Plaintiff's claim for maintenance and cure.[37] Defendant argues that Plaintiff has failed to mitigate his damages and has engaged in willful misconduct and unreasonable refusal of cure by: (1) abusing Methamphetamine; (2) repeatedly failing to attend scheduled medical appointments; (3) failing to take medications as prescribed; (4) failing to attend physical therapy as prescribed; and (5) behaving in such a combative and aggressive manner with

---

[30] Rec. Doc. 32-1 at 7; Rec. Doc. 33-1 at 4.

[31] Rec. Doc. 32-1 at 8; Rec. Doc. 33-1 at 5.

[32] Rec. Doc. 33-1 at 5.

[33] Rec. Doc. 1.

[34] *Id.*

[35] See Rec. Doc. 32.

[36] Rec. Doc. 33.

[37] *Id.* at 1.

his medical providers that certain medical providers have removed themselves from his team of care.[38]

Defendant avers that Plaintiff forfeited his right to maintenance and cure by unreasonably refusing to accept medical care and voluntarily stopping short of maximum medical recovery by refusing medical attention, missing medical appointments, and failing to take medication as prescribed.[39] Additionally, Defendant asserts that Plaintiff's aggression towards his treating physicians, substance abuse, and his refusal to comply with safety protocols, demonstrate that Plaintiff willfully rejected recommendations of medical aid and that Plaintiff's medical providers discontinued treatment as a result.[40]

**B.**   ***Plaintiff's Arguments in Opposition to Defendant's Motion for Partial Summary Judgment***

In opposition, Plaintiff avers that genuine issues of material fact remain in dispute as to whether Plaintiff unreasonably refused medical care, such that summary judgment on the issue of maintenance and cure is inappropriate.[41] Plaintiff argues that he missed physical therapy appointments after his first surgery in 2020 due to high pain levels, and points out that the pain levels are documented by objective findings during his second surgery.[42]

Moreover, Plaintiff avers that a genuine issue of material fact exists as to whether his failure to complete the oral antibiotics as prescribed after his shoulder surgery impacted the infection in

---

[38] *Id.*

[39] Rec. Doc. 32-2 at 8–10.

[40] *Id.* at 10.

[41] Rec. Doc. 33 at 5.

[42] *Id.* at 6.

his shoulder.[43] Plaintiff alleges that the treatment note cited by Defendant evidences that an infection was present in Plaintiff's shoulder at the time of the surgery, and suggests that the antibiotics would not have prevented the infection.[44] Lastly, Plaintiff also avers that there exist genuine issues of material fact in reference to whether Plaintiff refused physical therapy following his discharge from Physicians Medical Center.[45] Specifically, Plaintiff alleges that his counsel reached out to the Defendant via email, seeking to determine when physical therapy would begin and outwardly communicated his desire to continue outpatient physical therapy at Physicians Medical Center.[46]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[47] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[48] All reasonable inferences are drawn in favor of the nonmoving party.[49] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

---

[43] *Id.* at 7.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[48] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[49] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[50] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[51] The nonmoving party may not rest upon the pleadings.[52] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[53]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[54] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[55] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[56] The nonmoving party must set forth

---

[50] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[51] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[52] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[53] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[54] *Celotex*, 477 U.S. at 323.

[55] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[56] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[57]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[58] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[59]

## IV. Law and Analysis

"If a seaman 'becomes ill or suffers an injury while in the service of a vessel,' regardless of which party is to blame, his Jones Act employer has 'an absolute, non-delegable duty'" to pay maintenance and cure.[60] Maintenance is a "per diem living allowance for food and lodging," and cure is "payment for medical, therapeutic, and hospital expenses"[61] The obligation to pay maintenance and cure continues until the seaman is cured or, if there is a permanent impairment, until he reaches the point of maximum medical recovery.[62]

A seaman forfeits maintenance and cure "only under certain well-defined and narrowly limited circumstances" such as where: (1) the seaman "voluntarily stops short" of maximum medical recovery[63] or (2) the seaman's "willful rejection of the recommended medical aid."[64] A

---

[57] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[58] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[59] *Morris*, 144 F.3d at 380.

[60] *In re 4-K Marine, L.L.C.*, 914 F.3d 934, 937 (5th Cir. 2019) (quoting *Bertram v. Freeport McMoran*, Inc., 35 F.3d 1008, 1011–13 (5th Cir. 1994)).

[61] *Id.*

[62] *Farrell v. United States*, 336 U.S. 511, 518 (1949).

[63] *Oswalt v. Williamson Towing Co.*, 488 F.2d 51, 54 (5th Cir. 1974).

[64] *Coulter v. Ingram Pipeline, Inc.*, 511 F.2d 735, 737 (5th Cir. 1975).

seaman does not forfeit his right to maintenance and cure if he has "reasonable grounds for refusing care" or "extenuating circumstances which made [his] failure to follow the prescribed regimen either reasonable or something less than a willful rejection."[65]

In the instant case, it is apparent from the record that disputed issues of material fact exist as to whether Plaintiff's conduct is within the well-defined and narrowly limited circumstances such that Defendant would be relieved of its obligation to pay him maintenance and cure. Reviewing the summary judgment evidence presented, a reasonable factfinder could conclude Plaintiff's failure to fully comply with medical appointments and treatment recommendations was reasonable or less than a willful rejection of medical care.

Defendant points to Plaintiff's missed physical therapy appointments in 2020, after his first surgery, to show that Plaintiff willfully rejected medical aid. However, the physical therapy records reflect that Plaintiff had a "poor tolerance" for physical therapy.[66] Plaintiff represents that this "poor tolerance" was due to severe shoulder pain, which is substantiated by the objective findings made during Plaintiff's second shoulder surgery in 2022.[67] The post-operative notes indicate that Plaintiff had "[l]eft shoulder avascular necrosis of the humeral head," "[p]ainful hardware," and "[h]ardware failure with penetration of the screws through the humeral head."[68] Therefore, there are fact issues in dispute regarding the reasonableness of Plaintiff failing to complete physical therapy in 2020.

---

[65] *Id.* at 737–38.

[66] Rec. Doc. 32-1 at 2.

[67] Rec. Doc. 33-7.

[68] *Id.* at 2.

Additionally, Defendant argues that Plaintiff's failure to complete the prescribed antibiotic course constitutes a failure by Plaintiff to mitigate damages or a willful refusal of medical care.[69] In opposition, Plaintiff points out that the infection was present at the time of the surgery.[70] Therefore, it is unclear to the Court whether Plaintiff's failure to complete the antibiotics actually contributed to the infection, and thus, there are facts in dispute regarding this issue.

Defendant also avers that since Plaintiff was discharged from Physicians Medical Center on July 7, 2022, Plaintiff has not responded to any of Terrebonne Physical Therapy Clinic's attempts to contact him, nor has Plaintiff rescheduled his missed appointment with Dr. Pourtaheri.[71] However, Plaintiff presents evidence showing that he attended an appointment with Dr. Pourtaheri on December 8, 2022.[72] Plaintiff also presents evidence showing that he attended an additional appointment with Dr. Stone on December 13, 2022.[73] Considering this evidence, a reasonable factfinder could conclude Plaintiff's failure to fully comply with medical appointments and treatment recommendations was reasonable or less than a willful rejection of medical care.

Finally, Defendant asserts that Plaintiff has been abusing Methamphetamine and has been aggressive with medical staff. Defendant points out that Dr. Stone is still prescribing narcotic medication to Plaintiff, following Dr. Haydel's decision to stop providing such medication.[74] Defendant states that it "has serious misgivings about being forced to continue paying for addictive narcotic medications for an individual whose documented abuse of methamphetamine continues

---

[69] Rec. Doc. 32-2 at 10.

[70] Rec. Doc. 33-8 at 2.

[71] Rec. Doc. 32-1 at 7-8.

[72] Rec. Doc. 33-11.

[73] Rec. Doc. 33-12.

[74] Rec. Doc. 32-2 at 11.

unabated."[75] Plaintiff does not directly respond to this argument, but states that "this tumultuous time in his life [] has been rooted in pain and discomfort."[76] The Court understands Defendant's misgivings. Nevertheless, there are disputes of fact regarding whether Plaintiff refused medical care. Accordingly,

        **IT IS HEREBY ORDERED** that Defendant REC Marine Logistics, LLC's ("Defendant") Motion for Partial Summary Judgment[77] is **DENIED**.

        **NEW ORLEANS, LOUISIANA,** this __10th__ day of April, 2023.

                                        **NANNETTE JOLIVETTE BROWN**
                                        **CHIE JUDGE**
                                        **UNITED STATES DISTRICT COURT**

---

[75] *Id.*

[76] Rec. Doc. 33 at 8.

[77] Rec. Doc. 32.